IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>WISCONSIN STATE CIRCUIT COURT<br>  FOR DANE COUNTY;<br>THEODORE K, NICKEL, COMMISSIONER<br>  OF INSURANCE OF THE STATE OF<br>  WISCONSIN, as Rehabilitator of the<br>  Segregated Account of Ambac Assurance<br>  Corporation; and<br>AMBAC ASSURANCE CORPORATION<br><br>Defendants. | Case No. 11-cv-99 |

**COMPLAINT**

The United States of America brings this action, pursuant to 26 U.S.C. § 7402, at the

direction of the Attorney General of the United States:

(1) to enjoin the Wisconsin State Circuit Court of Dane County (Hon. William D.

Johnston, presiding) ("State Court") from enforcing, and the court-appointed

Rehabilitator and Ambac from attempting to enforce, an *ex parte* injunction the State

Court issued on November 8, 2010, in *In the Matter of the Rehabilitation of Segregated*

*Account of Ambac Assurance Corporation*, Case Number 2010CV001576 ("the state

rehabilitation action"), to the extent that injunction purports to restrain and enjoin the

United States Internal Revenue Service from, *inter alia*, collecting (or possibly even

assessing) any potential federal tax liability owed by Ambac Assurance Corporation and

other members of its consolidated tax group (which might exceed $700 million);

1

(2) to enjoin the State Court from enforcing, or the court-appointed Rehabilitator and Ambac from attempting to enforce, the decision and order of January 21, 2011, confirming the rehabilitation plan for the Segregated Account, insofar as that order purports to make the November 8 Injunction permanent, purports to assert exclusive state jurisdiction over certain federal tax liabilities of Ambac and other members of its consolidated tax group, and otherwise purports to bind the United States;

(3) to enjoin the State Court from conducting any other proceedings that further violate the Anti-Injunction Act (26 U.S.C. § 7421) and/or the sovereign immunity of the United States;

(4) to determine that the November 8 Injunction and those parts of the January 21 Order that purport to restrain the United States, assert exclusive state court jurisdiction over federal tax liabilities, or bind the United States to the allocation of the potential tax liability, violate the Anti-Injunction Act, violate the sovereign immunity of the United States, and violate various other federal tax statutes and Treasury regulations and are therefore null and void; and

(5) to quash those orders so that they may not become the subject of future contempt proceedings should the United States take any action that would otherwise violate the terms of the State Court's orders.[1]

---

[1]     As the allegations below reflect, this action is being filed in the wake of an order of this Court rejecting the United States' attempt to remove the State Court proceeding, and therefore remanding it, on the premise that the McCarran-Ferguson Act makes inapplicable the removal provisions of the Judicial Code.  The United States has appealed the remand order but its appealability is uncertain (the Seventh Circuit has called for briefing on the issue of jurisdiction for the appeal).  Regardless of whether the McCarran-Ferguson Act preempts the Judicial Code's removal provisions, the United States maintains that it does not preempt the tax Anti-Injunction Act, 26 U.S.C. § 7421(a) and cannot preempt sovereign immunity.  Section 7402(a) of the

(continued...)

For its complaint, the United States alleges as follows:

### *Jurisdiction and Parties*

1.  Jurisdiction exists pursuant to 26 U.S.C. § 7402(a) and 28 U.S.C. §§ 1331 and 1340, and venue is proper under 28 U.S.C. § 1391(b).

2.  The Wisconsin State Circuit Court of Dane County ("State Court") is a court organized under the laws of the State of Wisconsin and is found within this federal judicial district.  To the extent that the State Court is not subject to the process of this Court (and the United States maintains that, as a matter of federal law, it is, notwithstanding any State law to the contrary), the United States alternatively seeks relief against Judge Johnston solely in his official capacity as presiding judge in the rehabilitation action.

3.  Ambac Assurance Corporation ("Ambac") is an insurance company domiciled in and organized under the laws of the State of Wisconsin.  Ambac is a wholly owned subsidiary of Ambac Financial Group Inc. (AFGI), a holding company headquartered in New York City.  For purposes of this Complaint, the term "Ambac" refers to all affiliates and subsidiaries of Ambac Assurance Corporation except AFGI.  Ambac is named in this Complaint because it may wish to

---

[1]  (...continued)

Internal Revenue Code specifically gives the federal district courts, "at the instance of the United States," authority to enforce any of its provisions, including § 7421(a), and provides that this authority is "in addition to" all other remedies available to the United States in the federal district courts.  This provision reflects the full implementation of Article III of the Constitution's provision that the Judicial Power extends to "Controversies to which the United States shall be a party," and that this Court thus has no authority to abstain.  Additionally, since there has been no final judgment (after the exhaustion of appeals) in the State Court specifically addressing the sovereign immunity and jurisdiction issues raised in this complaint, this "collateral attack" on the State Court's orders is proper under well-established Supreme Court precedent.  *See United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506 (1940) (holding that order in rehabilitation proceeding could be collaterally attacked as a violation of sovereign immunity unless that issue was actually raised and finally adjudicated in the first proceeding); *Travelers Indemnity v. Bailey*, 129 S.Ct. 2195, 2206 n. 6 (2009) (citing *United States Fidelity & Guaranty* as permitting "a collateral attack on subject-matter jurisdiction . . . 'where the issue is the waiver of [sovereign] immunity.'").

defend the orders of the State Court in the rehabilitation action or may seek to enforce the orders of the State Court against the United States.

4.   The Segregated Account of Ambac Assurance Corporation (the "Segregated Account") is a separate account within Ambac created pursuant to Wisconsin insurance statutes. Since March 24, 2010, the Segregated Account has been subject to rehabilitation proceedings in the State Court.

5.   Theodore K. Nickel is the Commissioner of Insurance of the State of Wisconsin (hereinafter, "Commissioner" or "Rehabilitator"), and is named in this Complaint because he is the rehabilitator of the Segregated Account in the rehabilitation action and may wish to defend the orders of the State Court therein or may seek to enforce the orders of the State Court against the United States.

*Factual Background*

6.   Ambac Assurance Corporation participated in a consolidated tax group for federal income tax purposes.  Ambac Assurance Corporation's parent, AFGI, filed a consolidated federal income tax return on behalf of itself and all of its subsidiaries.

7.   Under federal tax law, each and every member of a consolidated tax group is severally liable for the tax liabilities of the entire group, and the IRS may collect the entire tax liability of the consolidated tax group from any member of that group.  26 C.F.R. §§ 1.1502-6; 1.1502-78.

8.   Also as a matter of federal tax law, while the members of a consolidated tax group may allocate tax liabilities for internal accounting purposes, "No agreement entered into by one or more members of the group with any other member of such group or with any other person shall in any case have the effect of reducing the liability prescribed under this section." 26 C.F.R. § 1.1502-6(c).

9.  Based on losses claimed by the AFGI consolidated tax group in 2007 and 2008, AFGI received approximately $700 million in "tentative" tax refunds pursuant to 26 U.S.C. § 6411. Section 6411 requires the IRS to provide a "tentative" refund within 90 days of an application by a corporate taxpayer that reports it has overpaid tax due to a net operating loss ("NOL") carryback, among other situations, after a limited IRS examination (which limitation precludes the IRS from questioning the merits of the claimed loss that generates the carryback). This refund is "tentative" because the IRS "retains the right to conduct a more thorough audit of the taxpayer's application later and recapture any funds that it has erroneously paid.'" *Coca-Cola v. United States*, 87 Fed. Cl. 253, 256-57 (Fed. Cl. 2009), citing 26 U.S.C. § 6213(b)(3) & Treas. Reg. § 301.6213-1(b)(2).

10.  AFGI allocated the $700 million to Ambac Assurance Corporation in accordance with an internal allocation agreement.

11.  Ambac Assurance Corporation submitted to the Commissioner a request to establish a segregated account for certain toxic policies pursuant to Wisconsin Statute § 611.24(2), which allows an insurance corporation to establish an account for "any part of its business."  According to the legislative comments in the Wisconsin statute, a segregated account is the equivalent of a "corporation within a corporation," with the "basic idea behind segregated accounts" being that "different operations" within the insurance company "can be kept independent without formally creating a separate corporation." Wis. Stat. § 611.24 cmts. When properly done, some of an insurance corporation's business is placed into a separate account and insulated from the rest of the company's business.  *Id.*

12. Ambac Assurance Corporation placed into its segregated account some of its insurance policies and some of its other potential liabilities. It did not (and has not) placed all of its assets and liabilities into the Segregated Account.

13. On March 24, 2010, the Insurance Commissioner filed a petition in the State Court to rehabilitate the Segregated Account under the Wisconsin insurance insolvency statutes, Chapter 645 of the Wisconsin Statutes. That petition was granted that same day, and the Commissioner was named rehabilitator of the segregated account.

14. As a result of the order of rehabilitation, the Segregated Account came under the custody of the State Court, and the State Court has restrained the holders of policies and liabilities in the Segregated Account from seeking to collect from the assets of either Ambac or the Segregated Account except as approved by the State Court.

15. By contrast, Ambac itself (excepting only the Segregated Account) is not subject to rehabilitation, and is not within the custody of the State Court. For that reason, any claims of policyholders of policies not consigned to the Segregated Account, or of creditors whose liabilites were not consigned to the Segregated Account, are paid out of the general assets of Ambac in the regular course without the restraints of the State Court's control.

16. On October 28, 2010, the IRS sent AFGI an information document request seeking information relating to the basis for the tentative refunds. Shortly thereafter, AFGI (Ambac's parent) filed for Chapter 11 bankruptcy protection and filed an adversary proceeding in the bankruptcy court to determine its tax liability as to the tentative refunds pursuant to 11 U.S.C. § 505(a). That action remains pending in the Southern District of New York.

17. On Sunday, November 7, 2010, Ambac purported to allocate to its Segregated Account any federal tax liabilities it has or may ever have for all tax years prior to and including

December 2009 and specifically any liabilities it may have with respect to the $700 million

tentative tax refunds.  The Commissioner approved the allocation, and filed a "Notice" with the

State Court on November 8, 2011, the same day that AFGI filed for bankruptcy.

18. Additionally, on November 8, 2010, the Commissioner sought and obtained

from the State Court the November 8 Injunction, which, in pertinent part, purports to enjoin the

United States Internal Revenue Service from:

> 3. . . . commencing or prosecuting any actions, claims, lawsuits or other formal
> legal proceedings in regard to . . . [Ambac's potential federal tax liabilities] in
> any state, federal or foreign court, administrative body or other tribunal against:
> (a) the Segregated Account; (b) any subsidiary of Ambac whose stock, limited
> liability company member interests or other forms of ownership interests were
> allocated to the Segregated Account . . .; (c) Ambac Assurance Corporation . . .
> ; (d) any subsidiary of Ambac; or (e) the Rehabilitator. This Court has exclusive
> jurisdiction over any such actions, claims or lawsuits.
>
> 4. . . . taking any prejudgment or other steps to transfer, foreclose, sell, assign,
> garnish, levy, encumber, attach, dispose of, or exercise purported rights in or
> against any property or assets of the Segregated Account, Ambac, . . . or Ambac
> subsidiaries in respect of [Ambac's potential federal tax liabilities.]

In paragraph 2 of the Injunction, the Wisconsin State Court noted that the "Order is made in

furtherance of the allocation" of Ambac's tax liabilities "to the Segregated Account."

19.  Because the Commissioner chose to seek the November 8 Injunction *ex parte* and

without notice to the United States, the United States had no opportunity to contest this action

before the Injunction was entered by the State Court.  The United States first learned of the

Notice and the November 8 Injunction when it received a letter dated November 8 from the

Commissioner's outside counsel containing a copy of the November 8 Injunction.  The United

States was never served with a subpoena or properly made a defendant in the State Court action.

20.  By its terms, the November 8 Injunction enjoins the IRS from taking any action to

collect Ambac's potential federal tax liability, not just from the Segregated Account, but from

Ambac Assurance Corporation and its subsidiaries.  Additionally, while the Injunction is ambiguous, the United States is concerned that the Rehabilitator may try to argue that the Injunction also bars the assessment of tax by the IRS.

***Removal and Remand of Rehabilitation Action***

21.  On December 8, 2010, the United States filed a timely Notice of Removal with this Court, which was assigned Civil Action No. 10-CV-778, and filed a copy with the State Court .

22.  The removal notice was premised primarily on the November 8 Injunction as a proceeding against the United States under 28 U.S.C. § 1442 to the extent the Injunction was construed to enjoin the United States.

23.  The United States followed the removal notice with a motion to dissolve the November 8 Injunction.  That motion was filed in this Court on December 17, 2010.  The motion to dissolve the injunction was predicated on the United States' assumption that the removal was valid.  The United States' removal and motion to dissolve filed only in this Court did not constitute a general appearance in the State Court.

24.  Also on December 17, 2010, the Commissioner filed a motion to remand the case to State Court.

25.  On January 14, 2011, this Court granted the motion to remand on the ground that "the McCarran-Ferguson Act can restrict the right of removal to federal court in cases in which a state statute governing insurance sets up a comprehensive framework for state rehabilitation proceedings to be conducted in state court and removal would impair that framework."  This Court declined to rule on the merits of the United States' motion to dissolve the Injunction based on the Anti-Injunction Act and sovereign immunity.[2]

---

[2]   The United States has appealed the remand order to the Seventh Circuit Court of Appeals,
(continued...)

26.  This Court delivered the state court record back to the State Court on January 20, 2011.

***State Court's January 21 Order***

27.  On January 21, 2011, the State Court signed a Decision and Order confirming the rehabilitation plan.  Subsequently, on January 24, 2011, the State Court entered the decision in its record.

28.  The January 21 Order purports to make Ambac's potential federal tax liability "subject to the jurisdiction of this [State] Court and the priority structure adopted by the Plan."

29.  The January 21 Order also purports to make permanent the November 8 Injunction against the IRS and to bind the IRS to the allocation of Ambac's potential federal tax liability to the Segregated Account.

30.  The United States was not notified of and did not participate in the December state court hearings on the Commissioner's motion to confirm his plan.  And the January 21 Order did not address any of the United States' arguments regarding the Anti-Injunction Act or sovereign immunity that had been included in its motion to dissolve filed in this Court after removal and before remand.

***Commissioner's Attempt To Preempt Federal Review***

31. On February 7, 2011, the Commissioner, notwithstanding that the State Court had already purported to make the injunction against the United States permanent, belatedly requested the State Court to issue a ruling specifically on the motion to dissolve that the United States had filed in federal court after removal and before remand, and further requested that the

---

² (...continued)
Case No. 11-1158.  That appeal remains pending although the Court of Appeals has requested briefing on whether it has jurisdiction in light of 28 U.S.C. § 1447(d).

State Court schedule a hearing on an "expedited" basis as soon as the State Court's schedule would allow. The Commissioner likely filed this motion because the United States had, several days earlier, filed a jurisdictional memorandum in the Court of Appeals for the Seventh Circuit that indicated that the United States was considering filing a lawsuit brought under this Court's original jurisdiction. In seeking an expedited hearing, the Commissioner chose not to inform the State Court of the pending appeal by the United States to the Seventh Circuit, or of the United States' stated intent to file an original federal action. The Commissioner's claimed basis for its request for an expedited hearing was a purported need to "clarify" the November 8 Injunction. In fact, the Commissioner sought to have the State Court improperly adjudicate the issues of subject-matter jurisdiction and sovereign immunity that must properly be adjudicated in federal court, and to do so in haste in an attempt to preempt the pending Seventh Circuit appeal and this impending action.

## Count I
## Injunctive Relief

32. The State Court's orders against the United States enjoin or restrain the United States from collecting (and possibly assessing) federal taxes. As such, those orders violate the Anti-Injunction Act, 26 U.S.C. § 7421(a), which explicitly provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person."

33. The State Court's orders also violate the sovereign immunity of the United States by purporting, in the absence of an express statutory waiver of the sovereign right to be immune from suit, to bind the United States to the allocation of any tax liability of Ambac's consolidated tax group to the Segregated Account, and from otherwise enjoining collection of any tax.

34.   The State Court's orders also violate the federal consolidated-return tax regulations by purporting to allocate all pre-2010 tax liabilities of Ambac's consolidated tax group to the Segregated Account, binding the IRS to that allocation, and restraining the IRS from collecting these consolidated tax liabilities from Ambac or any other members of the consolidated tax group.

35.   Accordingly, the State Court lacked any jurisdiction, authority, or right to issue (1) the November 8 Injunction, and (2) those parts of the January 21 Order that purport to make the November 8 Injunction permanent, assert exclusive state jurisdiction over pre-2010 federal tax liabilities of Ambac, and otherwise purport to bind the United States.  Those orders were and are null and void as a matter of federal law.  Any future orders the State Court may make regarding Ambac's potential federal tax liabilities will also be made without jurisdiction, authority, or right, and would likewise be null and void.

36.   The McCarran-Ferguson Act, 15 U.S.C. § 1012(b), does not affect this result for several reasons, including: (1) the Seventh Circuit has held the Internal Revenue Code is "in the absence of language evidencing a different purpose, [] to be interpreted so as to give a uniform application to a nationwide scheme of taxation,"[3] and because neither McCarran-Ferguson nor Wisconsin state insurance statutes provide such language, insurance companies cannot therefore claim an exemption from the provisions of the Internal Revenue Code based on state law; (2) neither McCarran-Ferguson nor the Wisconsin state insurance laws contain an express waiver of the sovereign immunity of the United States (and, in any event, no state statute could achieve that purpose without an explicit unambiguous delegation by Congress which the McCarran-Ferguson Act does not do); (3) the state statutes at issue do not regulate the business of insurance

---

[3]     *Modern Life & Acc. Ins. Co. v. Comm'r,* 420 F.2d 36, 37-38 (7th Cir. 1969).

in the narrow sense that the Supreme Court has defined that term; (4) the relevant provisions of the Internal Revenue Code relate to the business of insurance; (5) the relevant provisions of the Internal Revenue Code do not impair the state statutes.  In fact, only one of these five propositions need be true for McCarran-Ferguson to be ineffective against the Anti-Injunction Act.   Also, sovereign immunity is not the result of an Act of Congress.  To the contrary, it is the absence of a statute specifically waiving that immunity that protects the United States from suit. Thus, the McCarran-Ferguson Act, which limits only the application of acts of Congress, cannot waive or otherwise affect the United States' immunity from suit.

37.  This Court has both jurisdiction and the obligation to enjoin the State Court from engaging in proceedings, or issuing or enforcing orders against the United States that violate the Anti-Injunction Act and as to which the United States has not waived sovereign immunity, and which the State Court lacked jurisdiction or power to make.

38.  The Court also has jurisdiction and the obligation to enjoin the Commissioner and Ambac from applying to the State Court for further orders or proceedings against the United States, or for seeking to enforce orders of the State Court, in violation of the Anti-Injunction Act or sovereign immunity.

39. Through the conduct described above, the State Court has substantially interfered with the enforcement of the federal internal revenue laws. Unless enjoined by this Court, Ambac and the Commissioner are likely to continue to request, and the State Court is likely to continue to issue, orders that interfere with federal tax administration.

40.  Defendants' conduct is causing irreparable injury to the United States, and the United States has no adequate remedy at law.  Defendants' conduct, unless enjoined, may cause a substantial loss of revenue to the United States Treasury, specifically a potential $700 million

federal tax liability that may be rendered effectively uncollectible except from the non-existent assets of the Segregated Account.  It is also likely to encourage the future manipulation of state insurance laws and insolvency proceedings by other corporate taxpayers with insurance company affiliates to artificially shed insurer-taxpayers of consolidated federal tax liabilities by contriving to allocate such liabilities to a separate account or subsidiary, placing that separate entity in rehabilitation, and foreclosing the IRS from collecting those liabilities from the rest of the consolidated group.  The United States includes these allegations for the sake of completeness in what is a unique circumstance, because the State Court's injunction appears to be completely unprecedented.  But, the United States maintains that it is not required to demonstrate harm from the State Court Injunction because sovereign immunity and 26 U.S.C. § 7421(a) simply bar such an injunction, regardless of any showing of harm.

41.  Additionally, the requested injunction will serve the public interest.

### Count II
### Judgment Determining the State Court Orders To Be Void and/or Quashing Them

42.  The United States re-alleges paragraphs 1 through 41 as though fully set forth herein.

43.  In addition or, in the alternative if this court is unwilling to enjoin the State Court or finds it unnecessary to do so based on the relief requested in this Count, the United States is entitled to a determination that the November 8 Injunction and those parts of the January 21 Order that purport to restrain the IRS, assert exclusive state court jurisdiction over federal tax liabilities, or bind the IRS to the allocation of the potential tax liability, violate the Anti-Injunction Act, the sovereign immunity of the United States and the consolidated tax statutes and regulations in the Internal Revenue Code and are therefore null and void and of no effect.  The United States is further entitled to an order quashing those state court orders so that they may not

become the subject of any future contempt proceedings should the United States take any action that violates the terms of those orders.

WHEREFORE, the United States prays that this Court

(a)  enjoin the Wisconsin State Circuit Court of Dane County (Hon. William D. Johnston, presiding) from enforcing, and the Rehabilitator and Ambac from seeking to enforce, the November 8, 2010 injunction, purporting to restrain and enjoin the Internal Revenue Service from, *inter alia*, collecting (and possibly assessing) any federal tax liability owed by Ambac Assurance Corporation and other members of its consolidated tax group;

(b) enjoin the State Court from enforcing, and the Rehabilitator and Ambac from seeking to enforce, the decision and order of January 21, 2011, confirming the rehabilitation plan for the Segregated Account, insofar as that order purports to make the November 8 Injunction permanent, asserts exclusive state jurisdiction over certain federal tax liabilities of Ambac, and otherwise purports to bind the United States;

(c) enjoin the State Court from conducting proceedings directed at further violating the Anti-Injunction Act (26 U.S.C. § 7421) and/or the sovereign immunity of the United States; and/or

(d) determine that the November 8 Injunction and those parts of the January 24 Order that purport to restrain the IRS, assert exclusive state court jurisdiction over federal tax liabilities, or bind the IRS to the allocation of the potential tax liability, violate the Anti-Injunction Act, the sovereign immunity of the United States and the consolidated tax statutes and regulations in the Internal Revenue Code and are therefore null and void and of no effect; and therefore enter an order quashing said orders; and

14

(f) for such other and further relief as may be or become appropriate.

Respectfully submitted,

February  9, 2011                         UNITED STATES DEPARTMENT OF JUSTICE

                                         /s/ Robert J. Kovacev

                                         ROBERT J. KOVACEV
                                         Senior Litigation Counsel, Tax Division

                                         /s/ Hilarie Snyder

                                         HILARIE SNYDER
                                         Trial Attorney, Tax Division

                                         Post Office Box 7238
                                         Washington, D.C.  20044

                                         Telephone: (202) 307-2708 (Snyder)
                                         Telephone: (202) 307-6541 (Kovacev)
                                         Fax:  (202) 514-6770
                                         hilarie.e.snyder@usdoj.gov
                                         robert.j.kovacev@usdoj.gov